**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRYAN MICHAEL FERGASON,<br><br>                              Petitioner,<br><br>        v.<br><br>CALVIN JOHNSON, et al.,<br><br>                              Respondents. | Case No. 2:19-cv-00946-GMN-BNW<br><br>**Order Denying Petition for Writ of Habeas Corpus and Granting a Certificate of Appealability** |

**I.    Summary**

Bryan Michael Fergason is a Nevada prisoner who was convicted after a jury trial of one count of Conspiracy to Possess Stolen Property and/or to Commit Burglary (gross misdemeanor) and 25 separate felony counts of Possession of Stolen Property. (ECF No. 45-18.)  Fergason's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 alleges trial counsel was ineffective in violation of the Sixth Amendment, and Fergason's sentence of 20 years to Life imprisonment is disproportionate in violation of the Eighth Amendment. (ECF No. 70.)  The Court denies the Petition, grants a Certificate of Appealability for the claims raised in Ground 2(C) of the petition, and directs the Clerk of Court to enter Judgment.

**II.    Background[1]**

Between 2001 and 2006, certain Las Vegas businesses were burglarized, and a wide variety of items were reported stolen. (ECF Nos. 44-22–44-27; 98-2.)  On September 24, 2006, a bartender called 911 after a witness saw someone in a white or gray Dodge van was breaking into the nearby dentist's office.  The Las Vegas Metropolitan Police Department ("Metro") arrived quickly and stopped Petitioner Bryan Michael Fergason and Daimon Monroe in the same white Dodge van with Monroe's girlfriend, then known as Tonya Trevarthen.  Nothing was missing from the

---

[1] The Court makes no credibility, factual, or other findings regarding the evidence presented in the state courts.  This background summary is based on the state-court record and serves as merely a backdrop to the Court's consideration of the issues presented in the case.  Failure to mention specific evidence or a category of evidence does not signify the Court overlooked it in considering the claims in the petition.

dentistry; however, the police arrested the men for burglarizing Anku Crystal Palace earlier that evening as the business owner identified his stolen property inside the van.  Also inside the van, Metro found an unusual tool that permitted traceless entry through certain types of doors that are commonly used for businesses.  (ECF Nos. 44-23 at 86; 44-24 at 27–49, 88–90; 44-25 at 34–72, 197–98, 214–16, 256–71; 102-1.)

Monroe was released on bail while Fergason remained in custody.  During that time, Metro conducted surveillance of the residence and activities of Monroe, Trevarthan, and their associate, Robert Holmes.  Metro listened to a hundred or more jail calls among Fergason, Monroe, and Holmes.  While Fergason was in custody, Trevarthan, Monroe, and Holmes moved the contents of Fergason's apartment to a storage unit. (ECF Nos. 44-23 at 191–99, 311–17, 341; 44-24 at 152–53, 173–74; 44-25 at 206–09, 257–60, 292–96; 44-27 at 15–20.)

In November of 2006, Metro executed search warrants and recovered many of the items stolen from the 26 Las Vegas businesses that were burglarized between 2001 and 2006, large amounts of cash, and other incriminating evidence, from (1) the residences of Monroe and Trevarthan, Ferguson, and Holmes; (2) Fergason's storage unit; (3) three storage units leased by Monroe and Trevarthan; (4) bank accounts and safety deposit boxes held by Fergason and Trevarthen; and (5) Ferguson's vehicle. (ECF Nos. 44-22 at 230–36; 44-23 at 10–27, 127–37, 155–176, 199–299, 317–341; 44-24 at 50–53, 91–96, 112–138, 153–201; 44-25 at 82–95, 151–70, 179–91, 272–92.)

The Indictment charged Fergason, Monroe, Trevarthen, and Holmes, with one gross misdemeanor count of Conspiracy to Possess Stolen Property and/or to Commit Burglary between September 20 and November 27, 2006, and 26 counts of Possession of Stolen Property. (ECF Nos. 43-8; 43-10; 44-20.)  The State reduced charges against Trevarthen in exchange for her guilty plea and testimony at the separate trials of Monroe and Fergason. (ECF Nos. 43-1 at 21, 32, 76; 44-25 at 245–54.)  The jury convicted Fergason of all but one count of Possession of Stolen Property and he was sentenced to an aggregate of 20 years to life, to run consecutive to a six-year sentence imposed in a different case. (ECF No. 45-1.)  Fergason unsuccessfully sought relief in state court on direct appeal and in post-conviction review proceedings. (ECF Nos. 45-32; 48-14.)

**III.     Governing Standards of Review**

**A.     Review under the Antiterrorism and Effective Death Penalty Act**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for consideration of Fergason's petition:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10, 412) (internal citation omitted).

The Supreme Court has instructed that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal citations omitted). A state court is not required to cite Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). The petitioner carries the burden of proof. *See Cullen*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### B.   Standards for Evaluating Ineffective Assistance of Counsel Claims

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). A petitioner claiming ineffective assistance of counsel ("IAC") must demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

For *Strickland*'s performance prong, a petitioner making an IAC claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The issue is not what counsel might have done differently but whether counsel's decisions were reasonable from his or her perspective at the time. *Id.* at 689–90. In considering such claims, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*.

## IV.  Discussion[2]

### A.  Ground 2(A)—IAC—Failure to Move to Strike Trevarthen's Testimony

Fergason alleges trial counsel provided ineffective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments, by failing to contemporaneously object and move to strike Trevarthen's testimony that Fergason did not hide the fact that he participated in "burglaries to bring home the sports memorabilia, and the different things," depicted in photographs of the stolen property.  Fergason claims he was prejudiced because the trial court earlier excluded evidence that Fergason committed burglaries, the motion to strike the testimony would have been granted, and the cautionary instruction directing the jury that it could use Trevarthan's testimony only for determining whether Fergason knew the property was stolen did not cure the prejudice.  (ECF No. 70 at 12–16; 90 at 15–19.)  The respondents contend Fergason was not prejudiced because an objection would not have changed the ruling that the testimony was admissible as non-hearsay, there was overwhelming evidence Fergason participated in a conspiracy and knowingly possessed all of the stolen property for which he was convicted, and juries are presumed to follow instructions. (ECF No. 85 at 25–28.)  For the reasons discussed below, the Supreme Court of Nevada's application of *Strickland* is reasonable and habeas relief is denied for Ground 2(A).

### 1.  State Law

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Nev. Rev. Stat. § 48.045(2).

---

[2] Fergason alleges the standard of review proscribed by 28 U.S.C. § 2254(d) violates the U.S. Constitution, specifically the Suspension Clause (Article One, Section Nine, clause two); fundamental principles of separation of powers (Articles One, Two, Three); the ban on cruel and unusual punishments (Amendments Eight and Fourteen); and the guarantee of due process (Amendments Five and Fourteen). (ECF No. 70 at 8.)  Respondents did not address these claims in their motion to dismiss or their answer to the petition. *See Smith v. Ryan*, 823 F.3d 1270, 1285 (9th Cir. 2016) (addressing the merits of a procedurally defaulted claim where the State waived the affirmative defense); *see also McDaniels v. Kirkland*, 813 F.3d 770, 775 n.3 (9th Cir. 2015) (same).  Fergason concedes the Ninth Circuit Court of Appeals has rejected arguments that AEDPA violates the Suspension Clause and separation of powers doctrine. (ECF No. 70 at 8) (citing *Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007)).  Rule 2(c) of the Rules Governing Section 2254 Cases requires a federal habeas petition specify all grounds for relief and "the facts supporting each ground." Conclusory allegations unsupported by specific facts may be summarily dismissed. *Mayle v. Felix*, 545 U.S. 644, 649, 655–56 (2005); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Fergason fails to specify facts or law that supports these allegations.  The Court therefore dismisses these claims with prejudice as conclusory and without merit.

"The principal concern with admitting this type of evidence is that the jury will be unduly influenced by it and convict a defendant simply because he is a bad person." *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 677 (2006); *see also Rosky v. State*, 121 Nev. 184, 194–95, 111 P.3d 690, 697 (2005) (explaining that "[p]rior bad act evidence forces the accused to defend himself against vague and unsubstantiated charges and may result in a conviction because the jury believes the defendant to be a bad person.") (quoting *Braunstein v. State*, 118 Nev. 68, 73, 40 P.3d 413, 417 (2002)).  Although prior bad act evidence is presumed inadmissible, it may nonetheless be admissible, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Rosky*, 121 Nev. at 194, 111 P.3d at 696.  To overcome the presumption that prior bad act evidence is inadmissible, a trial court must hold a hearing outside the presence of the jury and determine (1) the prior bad act is relevant to the crime charged; (2) the prior act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not outweighed by the dangers of unfair prejudice. *Id.* at 195, 111 P.3d at 697; *Braunstein*, 118 Nev. at 72–73, 40 P.3d at 416–17.

## 2.    Additional Background

Fergason's trial counsel moved *in limine* to bar admission of evidence that Fergason committed burglaries.  Counsel argued Fergason was not charged with burglary and such evidence would permit a jury to convict him of possession of stolen property based on his having stolen the property while committing burglary. (ECF No. 44-8.)  The trial court stated it was unaware, at the time of the ruling, of "any evidence that they actually did the burglaries," was not sure whether "the State can put on somebody to say, he did that burglary," and precluded evidence that Fergason committed "[a]ny burglaries, or crimes pre-dating that time period [of the conspiracy charge] . . . ," i.e., September 20 to November 27, 2006.  (ECF Nos. 44-20; 57-11 at 33–36.)

Before Trevarthan testified, the trial court ruled during a hearing outside the presence of the jury that, under certain conditions, Trevarthan was permitted to testify Fergason stole certain property for purposes of establishing Fergason knew that particular property was stolen:

> [DEFENSE COUNSEL]: But [the prosecutor] wants to sit there and allow [Trevarthan] to say that my client with Monroe stole all this stuff collectively in [Trevarthan and Monroe's] house.  He is not on trial for that.

THE COURT: I understand.

[DEFENSE COUNSEL]: This has been the very issue.  This is an uncharged bad act, and—

THE COURT: Well, one of the ways you know that it's stolen is when you stole it.

[DEFENSE COUNSEL]: Well, yes.

THE COURT: I mean, if they come home with it and they say, hey, we had another score, we hit a doctor[']s office and got this stuff, he['s] got to live with it.

[DEFENSE COUNSEL]: But that means that he had to have been present for that conversation.

THE COURT: You have to be present, or have said it.

(ECF No. 44-25 at 120–24.)  The State explained that Trevarthan would testify that certain property found at her residence and in Fergason's storage unit, was stolen.  Fergason's trial counsel objected the testimony constituted hearsay, and the prosecutor said Fergason told her it was stolen:

> [THE PROSECUTOR]: I said, how do you know that the items are stolen?  I didn't put any words in her mouth.  She said—I, first of all, I said, how did you, did you go to those other stores, because how did you recognize that those items are stolen?  She said, because those items would come into [Trevarthan's house] first before they would go out to the storage units.  I said, and then how did you know that those items are stolen to begin with?  She said, because [Fergason and Monroe] both told me that they were stolen.

(*Id.* at 123–27.)  The trial court ruled the testimony admissible to prove Fergson knew the property was stolen. (*Id.*)  Thereafter, Trevarthan testified she lived with Monroe, met Fergason through Monroe in 2001 or 2002, and the two men visited on a regular basis.  She said she knew most of the items depicted in photographs of her residence were stolen "[b]ecause [Fergason and Monroe] never hid the fact that they were going out to do burglaries to bring home the sports memorabilia, and different things depicted in the pictures," and she was present when Monroe and Fergason brought stolen furniture, a hot tub, and "the other stuff" to her house. (*Id.* at 192–99, 217–19.)

The trial court sua sponte offered to give the jury a cautionary instruction to the jury that "this isn't a burglary trial," the only issue was whether it was known the property was stolen, and to otherwise disregard the testimony. (*Id.* at 220–26.)  Following Trevarthan's testimony, and outside the presence of the jury, Fergason's counsel requested the cautionary instruction:

[DEFENSE COUNSEL]: And, Your Honor, just in an overabundance of caution from considering the prior testimony both on cross and on direct, I'd ask that you provide a cautionary instruction to the jury regarding some of the testimony that has come out from Ms. Trevarthan regarding potential other uncharged acts.

THE COURT: Okay.  This gentleman is on trial for—I think that's a fair request, and I told you that I would give it.  Is on trial for possession of stolen property.  I'm going to give you the elements of possession of stolen property.  One of which is, that you know or have reason to know that it's stolen, and there's been some testimony from which you could infer that, or maybe you wouldn't infer that, but neither he, nor Mr. Monroe, nor anybody else is on charge for theft, or burglary, nor has there been any evidence presented up to this juncture that they did that, and to the extent that there's any mention of that, please, consider it only as it relates to whether or not they may have known that the property was stolen, and for no other purpose, because they're not charged with that, and it's not appropriate to take any evidence that would relate to that.

Is that fair, or is there something more that you want?

[DEFENSE COUNSEL]: I think that should be fair then, Your Honor.

(*Id.* at 240–41.)  At the close of evidence, the trial court instructed the jury that it could consider bad-act evidence only for the purpose of proving Fergason knew property was stolen:

Evidence that the defendant committed offenses other than that for which he is on trial, if believed, was not received and may not be considered by you to prove that he is a person of bad character or to prove that he has a disposition to commit crimes.  Such evidence was received and may be considered by you only for the limited purpose of proving the defendant's knowledge regarding whether property was stolen.

You must weigh this evidence in the same manner as you do all other evidence in the case.

(ECF No. 44-30 at 26.)

### 3.    State Supreme Court's Determination

The Supreme Court of Nevada determined, among other things, that trial counsel's performance was not prejudicial because the jury was given a cautionary instruction:

Appellant argues the district court erred by rejecting his claim that trial counsel was ineffective for failing to object when a witness stated that appellant had committed other burglaries.  To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*).  Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).  We give deference to the district court's factual findings if

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

Appellant fails to demonstrate that the district court erred by denying this claim. The relevant transcripts included in the appendix are almost impossible to read, thwarting our review. *See Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."). But even accepting appellant's factual representations regarding this claim as true, he fails to demonstrate that counsel performed deficiently. According to appellant, counsel told the trial court that she made a strategic decision not to object to the statement so as not to bring attention to it. That decision was not objectively unreasonable. *See Johnson v. State*, 133 Nev., Adv. Op. 73, 402 P.3d 1266, 1273–74 (2017) ("[A]n attorney is not constitutionally deficient simply because another attorney would have taken a different approach."); *Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280–81 (1996) (providing that strategic decisions are "virtually unchallengeable absent extraordinary circumstances" (internal quotation marks omitted)). Appellant also fails to demonstrate prejudice. It appears that he has not included complete transcripts from his trial on appeal, which prevents this court from assessing the impact of the statement, if any, on the verdict. *See Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."). Regardless, appellant asserts that the district court gave a curative instruction at the conclusion of the witness' testimony. Thus, there is not a reasonable probability of a different result had counsel immediately objected.

(ECF No. 48-14 at 2–4.)

### 4.    Analysis of Ground 2(A)

The trial court's rulings at trial before Trevarthan's testimony permitted her to testify that Fergason stated he stole certain property (before the alleged conspiracy period) for the purpose of proving Fergason knew that property was stolen. *Rosky*, 121 Nev. at 194–95, 111 P.3d at 697–98. Had counsel contemporaneously objected and moved to strike the testimony, the motion would have been denied based on that ruling, but the trial court could have then immediately cautioned the jury with an instruction identical to the instruction the trial court ultimately gave to the jury, i.e., that the bad-act evidence could be used only to assess whether Fergason had knowledge that certain property was stolen. However, as the Supreme Court of Nevada held, there is no reasonable probability the result of the proceedings would have been different but for counsel's omission because a jury is presumed to follow the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Thus, the Supreme Court of Nevada's application of *Strickland's* prejudice prong is objectively reasonable. Fergason is not entitled to federal habeas relief for Ground 2(A).

9

### B.       Ground 2(C)—IAC—Failure to Hire a Valuation Expert

Fergason alleges trial counsel's failure to hire an expert on valuation for the stolen property constitutes ineffective assistance because counsel was on notice that the value of the property for each of the 26 counts dictated the potential sentences for any convictions for possession of stolen property[3]. (ECF No. 70 at 19–20.)  Fergason raised a similar claim in his state post-conviction review proceeding but failed to exhaust it because it was not presented to the highest state court of review. (ECF No. 74 at 4); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) (stating that to satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round" of either direct appeal or collateral proceedings to the highest state court level of review available).

Fergason admits Ground 2(C) presents a brand new, albeit procedurally defaulted, claim because it is now supported by an expert valuation report submitted for the first time in these federal habeas proceedings, but he contends he can overcome the procedural default of the new claim under *Martinez v. Ryan*, 566 U.S. 1 (2012). (ECF No. 90 at 27); *see Creech v. Richardson*, 59 F.4th 372, 388 (9th Cir. 2023) (acknowledging that before the Supreme Court's decision in *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022), a claim previously presented to a state court could become a new unexhausted (and procedurally defaulted) claim if new evidence presented to the district court under *Martinez* either "fundamentally alter[ed] the legal claim already considered by the state courts" or "place[d] the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it.").

Fergason's expert valuation opinion concludes the State presented insufficient evidence at trial to reliably value the relevant property. ECF No. 68-4 (PEx. 21).  This Court previously ruled this "new" claim is technically exhausted and procedurally defaulted, and deferred consideration of whether Fergason can overcome the procedural default until it considers the merits. (ECF No. 77 at  5–6.)  For the reasons discussed below, the Court finds that consideration of Fergason's expert report is unfortunately prohibited by 28 U.S.C. § 2254(e)(2); Fergason's claim is therefore

---

[3] Of the 25 convictions for Possession of Stolen Property, 15 counts were category B felonies (property value over $2,500) and 10 were category C felonies (property value over $250). ECF No. 45-1

unchanged from the claim he failed to exhaust in state post-conviction proceedings; and Ground 2(C) must be dismissed as unexhausted.

### 1.    Applicable Legal Principles

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state court. *Cullen*, 563 U.S. at 180–81.  Before considering evidence that was not developed in the state-court proceedings, federal habeas courts must first determine such evidence "could be legally considered in the prisoner's case." *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (citing *Shinn*, 596 U.S. at 389–90).  AEDPA restricts a federal habeas court's consideration of evidence developed outside the state-court record if a petitioner failed to develop the factual basis of his claim in state court:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A)    the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)–(B); *see also Shinn*, 596 U.S. at 382 (affirming the prerequisites in § 2254(e)(2) apply only "when a prisoner 'has failed to develop the factual basis of a claim.'").  Although § 2254(e)(2) mentions evidentiary hearings, it applies to consideration of any new evidence for any purpose, whether submitted during an evidentiary hearing, in the form of an exhibit or in any other manner. *Shinn*, 596 U.S. at 389 (stating, "[w]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted

claim unless the exceptions in § 2254(e)(2) are satisfied.") (relying on *Holland v. Jackson*, 542 U.S. 649, 653 (2004)).

For purposes of § 2254(e)(2), the term "failed" means "the prisoner must be 'at fault' for the undeveloped record in state court." *Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.")  "Diligence for purposes of [§ 2254(e)(2)'s] opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Id.* at 435.  "[A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." *Id.* at 432.

The Supreme Court has held that the conditional clause of § 2254(e)(2) is triggered when state post-conviction review counsel fails to investigate matters for which counsel was on notice in any, but a cursory, manner. *Williams*, 529 U.S. at 439–440; *see also Shinn*, 596 U.S. at 385.  For example, in *Holland*, where the petitioner claimed state-post-conviction counsel did not heed the petitioner's pleas for assistance, the Supreme Court still held a prisoner responsible for his counsel's negligent failure to develop the state-court record. *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (citing *Coleman* and *Williams*).

The Supreme Court recently considered the question "[w]hether the equitable rule announced in *Martinez* permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state post-conviction counsel negligently failed to develop the state-court record," and concluded it does not. *Shinn*, 596 U.S. at 371.  In *Shinn*, two petitioners sought to support the merits of, and overcome the procedural default of, their ineffective assistance of trial counsel claims under *Martinez*, using evidence that was never developed in the state-court proceedings. *Id.* at 373–74, 382.  They argued they were not "at fault," and therefore had not "failed to develop the factual basis of a claim in State court proceedings[;]" rather it was the negligent failure of their state-post-conviction counsel that resulted in their failure to develop the state record for the defaulted claims. *Id.* at 371, 382.  The Supreme Court pointed out that the

diligence inquiry for the purpose of determining the application of § 2254(e)(2) is distinct from an inquiry about whether post-conviction counsel was ineffective for purposes of establishing cause under the equitable exception for defaulted claims of ineffective assistance of trial counsel under *Martinez*. *See Shinn*, 596 U.S. at 381, 384–85 (stating even if a petitioner's failure to raise ineffective-assistance claims in state court is excused under *Martinez*, "[t]here is an even higher bar for excusing a prisoner's failure to develop the state-court record, and explaining that *Martinez* does not excuse a prisoner's separate failure to develop the facts under AEDPA, because judge-made equitable rules, like *Martinez*, cannot claim supremacy over Congressional statutory text).

In *Shinn*, the Supreme Court reiterated its prior precedent that state-post-conviction counsel's ineffective assistance in developing the state-court record "is attributed to the prisoner," and stated, "[w]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied." *Shinn*, 596 U.S. at 382, 389.  In response to objections that "there is no point in developing a record for cause and prejudice if a federal court cannot later consider that evidence on the merits," the Supreme Court stated, "[i]f [§ 2254(e)(2)] applies and the prisoner cannot satisfy its 'stringent requirements,' . . . a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*." *Id.* at 389 (internal citation omitted).

## 2.    Analysis of Ground 2(C)

Fergason argues his state-post-conviction counsel "provided deficient performance by failing to secure an expert valuation report" to support his claim because "any reasonable post-conviction attorney would've reviewed the trial transcripts[4] and Mr. Fergason's pro se allegations, concluded those allegations presented a colorable legal theory, and investigated further by

---

[4] The stolen property was different in each of the 26 Stolen Property counts and included among other things: camping equipment, sports and entertainment memorabilia, framed albums, artwork, paintings, spa chemicals, See's candies, computers, commercial sub-zero refrigerators, ice makers, home furniture, home furnishings, plants, statues, home accessories, surround-sound speakers, televisions, antique tapestries, guitars, an oxygen-concentrator machine, hyperbaric chamber, massage chair, wide screen monitor, freezer, spa, ice compressor, digital receiver, cook top, meat slicer, production center, commercial vacuum, floor scrubber, floor buffer, drum station, and effects-processor. (ECF Nos. 44-22–44-27; 98-2.)

contacting potential experts about valuation." (ECF Nos. 70 at 19–20; 74 at 6–7; 90 at 22–28.) He contends this Court may consider his expert's property valuation report now because he is not personally at fault for the failure to develop the state court record, and therefore need not meet the requirements of § 2254(e)(2). He urges that he personally acted diligently because he alleged in his pro se state petition a claim of ineffective assistance of trial counsel for failure to consult an expert on valuation, requested the appointment of post-conviction counsel to assist him, and requested discovery and an evidentiary hearing. (ECF No. 90 at 25–28.) While his property evaluation issue was initially merely speculative, now he has an expert valuation report. The Respondents contend this Court may not consider the expert report because Fergason must, and does not, meet the requirements of § 2254(e)(2). The Court finds Fergason must, but fails, to meet the requirements of § 2254(e)(2). *Holland*, 542 U.S. at 653; *Shinn*, 596 U.S. at 382, 389.

Fergason's state pro se petition placed his subsequently appointed post-conviction counsel on more than cursory notice that Fergason claimed trial counsel was ineffective in failing to consult or hire an expert on valuation of the stolen property. (ECF No. 45-37 at 15–16, 54); *see Williams*, 529 U.S. at 439–40; *see also Shinn*, 596 U.S. at 385. However, nothing in the state court record suggests whether post-conviction counsel diligently attempted to obtain an expert report, or otherwise develop the state court record, to support that claim. The requirements of § 2254(e)(2) were triggered by the negligence of Fergason's state-post-conviction counsel in failing to develop the state court record. *Williams*, 529 U.S. at 439–40; *see also Shinn*, 596 U.S. at 385. Fergason's reliance on *West v. Ryan*, 608 F.3d 477 (9th Cir. 2010) and *Libberton v. Ryan*, 583 F.3d 1147 (9th Cir. 2009), is unpersuasive. In those cases, the petitioner and state-post-conviction counsel were each diligent in attempting to develop the state court record to support the constitutional claims at issue but were thwarted by the state courts' repeated denials of their requests for funds and an evidentiary hearing. *West*, 608 F.3d at 483–85; *Libberton*, 583 F.3d 1147.

Fergason argues his personal diligence in raising the property valuation issue in his pro se state petition is all that is required to avoid the requirements of § 2254(e)(2). He explains that.

"…the current version of Ground Two(C) is a substantially improved version of the pro se state court claim, the current version is a new claim for exhaustion purposes; it's technically

exhausted; it's in turn procedurally defaulted; and Mr. Fergason can rely on Martinez to excuse the default because Mr. Carling ineffectively failed to litigate this new version of the claim in the state district court." (ECF No 74 at 5).

However, Fergason cites no binding authority to support this argument, and the Court is unable to locate any binding Supreme Court or Ninth Circuit authority that expressly supports Fergason's position under his circumstances.  The argument that the requirements of § 2254(e)(2) do not apply where a petitioner acts diligently before the appointment of post-conviction counsel, and once appointed, the petitioner's post-conviction counsel was negligent in failing to develop the state court record to support the petitioner's claims, is contrary to *Holland* and *Shinn*.  The negligence of state-post-conviction counsel in failing to do his or her part to develop the state court record is attributed to the petitioner, and in such instances, the petitioner must meet the requirements of § 2254(e)(2) before a federal habeas court may consider new evidence for any purpose. *See Shinn*, 596 U.S. at 389; *Holland*, 542 U.S. at 653.

Fergason relies on Ninth Circuit authority that predates *Shinn*, and post-*Shinn* authority from the Fifth Circuit that held § 2254(e)(2) inapplicable to a *Martinez* analysis based on the argument that a *Martinez* analysis or *Martinez* hearing is not a "hearing on a claim." (ECF No. 90 at 25; relying on *Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) (en banc) (plurality op. of Fletcher, J.) and *Mullis v. Lumpkin*, 70 F.4th 906, 910 (5th Cir. 2023)).  Although the Ninth Circuit was one of the Circuits that previously held a *Martinez* analysis is not a "hearing on a claim," *e.g.*, *Detrich*, 740 F.3d at 1247, the Ninth Circuit has since determined *Shinn*'s holding greatly restricts "the circumstances in which a federal habeas court deciding *Martinez* claims may consider evidence beyond that already contained in the state court record." *See Creech*, 59 F.4th at 387–88.

The existing weight of post-*Shinn* authority in other Circuits holds *Shinn* disallows consideration of new evidence for purposes of a *Martinez* analysis or the merits of a federal habeas claim under circumstances where a petitioner must meet the prerequisites of § 2254(e)(2) but fails to do so. *Compare Rogers v. Mays*, 69 F.4th 381, 396 (6th Cir. 2023) (en banc) (holding that *Shinn* holds petitioners responsible for counsel's failure to develop the state court record, and where a petitioner's claim finds no support in the state-court record, he must meet the requirements of § 2254(e)(2) before he can present new evidence in federal habeas proceedings); *Stokes v. Stirling*,

64 F.4th 131, 136 (4th Cir. 2023) (holding *Shinn* prohibits the introduction of new evidence in support of *Martinez* claims); and *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 721–24 (3d Cir. 2022) (holding *Shinn* did not abrogate the Third Circuit's precedent that AEDPA allows factual development for purposes of *Martinez*, but a district court may not use the expanded record to decide the merits of a petitioner's ineffective-assistance claim, making a *Martinez* hearing a waste of time unless a petitioner can prevail on the state record), *with Mullis v. Lumpkin*, 70 F.4th 906, 910–11 (5th Cir. 2023) (holding "evidence outside the state record is admissible in *Martinez* claims for the limited purpose of establishing an excuse for procedural default" because Fifth Circuit precedent was not abrogated by *Shinn*).

Regardless of Fergason's personal diligence, the negligence of his subsequently appointed post-conviction counsel in failing to develop the state-court record to support the claim of ineffective assistance of trial counsel by, e.g., obtaining the opinion of a valuation expert, is attributed to Fergason and triggers the requirement that Fergason meet the criteria of § 2254(e)(2) before this Court may consider for any purpose, the expert report submitted for the first time in this federal proceeding. *Shinn*, 596 U.S. at 389; *Holland*, 542 U.S. at 653.  Fergason does not contend that he can meet the requirements of § 2254(e)(2).  Accordingly, the Court may not consider Fergason's expert report for any purpose.

Because the expert report may not be considered, it does not transform Fergason's trial-counsel-IAC claim into a new claim for purposes of procedural default analysis under *Martinez*. This leaves Fergason with his initial claim of trial counsel IAC that he failed to exhaust in state post-conviction review proceedings when he failed to appeal the denial of the claim by the state district court.  The Court must therefore dismiss Fergason's trial counsel IAC claim in Ground 2(C) as unexhausted.

### C.     Ground 3—Disproportionate Sentence

Fergason alleges his aggregate sentence of 20 years to life for the crimes in this case is disproportionate and cruel and unusual punishment in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments because it is grossly disproportionate and excessive to the severity of the crimes of possession of stolen property, and conspiracy to possess stolen property, as, in some

instances, the property was stolen years earlier and stored in places for which Fergason lacked direct control, and his felony history was connected to substance abuse. (ECF Nos. 70 at 20; 90 at 29–30.)   Respondents contend the state supreme court's determination is reasonable and Fergason's sentence is within the parameters of the relevant statutes and is not so grossly disproportionate to the gravity of the offenses and history of felony recidivism as to shock the conscience. (ECF No. 85 at 37–38.)

### 1.    Applicable Legal Principles

The Eighth Amendment forbids sentences that are "grossly disproportionate" to the crime. *Graham v. Fla.*, 560 U.S. 48, 59–60 (2010).  In non-capital cases, a court must first compare the gravity of the offense with the severity of the sentence to determine whether it is one of the "rare" cases which leads to an inference of gross disproportionality. *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (opinion of KENNEDY, J.); *see also Solem v. Helm*, 463 U.S. 277, 289–92 (1983) (explaining that the court weighs the criminal offense and penalty "in light of the harm caused or threatened to the victim or society, and the culpability of the offender" and agreeing that "'[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare . . . .'") (internal citation omitted); *see also Norris v. Morgan*, 622 F.3d 1276, 1290 (9th Cir. 2010) (stating, "[w]e compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offense and criminal history.") (citing *Ewing v. California*, 538 U.S. 11, 28–29 (2003); *accord Ramirez v. Castro*, 365 F.3d 755, 767–70 (9th Cir. 2004)).  "'[I]n the rare case in which . . . [the] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 60 (quoting *Harmelin*, 501 U.S. at 1005 (opinion of KENNEDY, J.)).  "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id.*

The Supreme Court has stated that "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and

limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem*, 463 U.S. at 290.  Generally, as long as the sentence imposed does not exceed statutory limits, it will not be overturned on Eighth Amendment grounds. *See United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001).

### 2.    Additional Background

The Supplemental Presentence Investigative Report recommended 12 months for the conspiracy conviction (count 1) to run consecutive to the 6-year sentence in a related case, plus concurrent or consecutive sentences for the remaining 26 convictions for possession of stolen property, depending on whether the sentencing court determined Fergason qualified for small or large, or was sentenced without, habitual criminal status. (ECF No. 98-2.)  The report indicated Fergason suffered two prior felony convictions in 1996 for using a controlled substance and using/being under the influence of a controlled substance; two prior felony convictions in 1998 for possession of a controlled substance and battery causing substantial bodily harm;  a prior felony in 2004 for attempted burglary; and two prior felonies for burglary related to the instant offenses in a separate case. (*Id.* at 5–6.)

The State sought large habitual criminal status for Fergason based on four of his prior felony convictions. (ECF No. 45 at 3–4.)  The State requested consecutive sentences as a large habitual criminal for (1) the group of convictions for possession of stolen property valued at $250 and above; and (2) the group of convictions for possession of stolen property valued at $2,500 or more.  The State asked the state district court to impose a sentence of Life without the possibility of parole for Fergason's codefendant Monroe but declined to make a recommendation for Fergason's sentence beyond requesting a large-habitual-criminal sentence. (*Id.*)  At the time, defendants who qualified as a large habitual criminal, were subject to a sentence of imprisonment for (1) a definite term of 10 to 25 years; (2) 10 years to life with the possibility of parole, or (3) life without the possibility of parole. Nev. Rev. Stat. § 207.010(b), *enacted by* Laws 1997, p. 1184.

Defense counsel argued for concurrent sentences without habitual criminal status or, alternatively, concurrent sentences as a small habitual criminal, concurrent with the related case:
///

[DEFENSE COUNSEL]: [Y]our Honor, what I'm asking today is not to give [Fergason] a quote, unquote free ride for this, but what I'm also asking is to not make it completely consecutive. What I'm asking is the following: I'm asking Your Honor to follow the recommendations as to the base sentence as to all of the counts as set forth. I am asking that Your Honor rule those as concurrent and I'm also asking today Your Honor, that you consider if you are going to sentence my client to an habitual, that you sentence him only to the small and that you sentence him to the small to run concurrent to what Judge Wall's case is. That will have an overlap, he will serve more time, additional time on this than Judge Wall's case, but it is part and parcel of this case and I'd like the Court to take that into consideration. He still would be on paper for a very, very significant amount of time, but it does give him the chance that potentially after about six to eight years, he would have a chance to get out . . . .

Defense counsel argued that the recommendation for Fergason's sentence for Possession of Stolen Property exceeded that of the recommended sentence for an individual convicted of six counts of Sexual Assault on a Minor. (ECF No. 45 at 10–11.)

The sentencing court was "not unmindful of how this went down and that, in rendering its sentencing decision, it considered the severity of the crimes in light of the harm it caused to the victims, the relative culpability of Monroe and Fergason, their lack of remorse and plan to continue burglaries upon their release, their criminal history, and the harshness of the penalty:

THE COURT: Well, let me say this: You know, I've been around a long time. This is the most prolific criminal enterprise I've ever seen in 40 years . . . .

They hurt many, many, many people. I mean, if you sit through this trial, some of these people because of what happened lost their businesses . . . the consequences of that is [sic] severe . . . you know, you go into your business and have things that you've had your whole life stolen, I mean, it just is like a kick in the gut.

These two have zero remorse and they will do it again the day they get out. I mean, you know, they won't say it publicly, but they know that. I mean, we heard the tapes. You know, Monroe calls Fergason in there and says: Hey, you know, I went out to give it a try to see if I still had the nerve and I'm good, I'm good. But I'm going to wait for you. And Fergason says: Yeah, that's cool, I'll be out, just give me a little time. We'll be out there dancing again. And that's what they'll do, there's no doubt about it.

Monroe has at least 20 felony convictions. Fergason has seven. I mean, the public deserves that they—first of all, it's the discretion that they be treated as a habitual criminal, but I wouldn't—I mean, it's a no-brainer to me that they are. Secondly, if I didn't, I would run every single one of these 25 consecutive, so it's pretty much the same anyway.

(*Id.* at 15–16.) The state district court sentenced Monroe as a large habitual criminal to Life without the possibility of parole. The court did not sentence Fergason as a small habitual criminal

nor to the maximum sentence allowed by law.  The court told Fergason, "you're an habitual criminal and this conduct is intolerable," and sentenced Fergason as a large habitual criminal to an aggregate of 20 years to life imprisonment, as follows: 12 months for count 1 the Conspiracy conviction, 10 years to Life for each of counts 2 and 4 thru 14 (concurrent to each other), and 10 to Life for each of counts 15 thru 27 (concurrent with each other but consecutive to the prior grouping of counts 2 and 4 thru 14).  The aggregate sentence of 20 years to Life was sentenced consecutive to his six-year sentence in an unrelated case. (*Id.* at 16–17.)

In his direct appeal, Fergason alleged the trial court violated his Eighth Amendment rights when it sentenced him as a large habitual criminal and sentenced him to 10 years to Life on 25 separate Life sentences. (ECF No. 45-21.)  The Supreme Court of Nevada adjudged the claim in a footnote: "Fergason also challenges . . . his sentencing under Nevada's large habitual felon statute. We have considered these arguments and conclude they lack merit." (ECF No. 45-32 at 3 n.1.)

### 3.     Analysis of Ground 3

The Court finds the state supreme court's determination that the sentence is not grossly disproportionate in violation of the Eighth Amendment is objectively reasonable.  The offenses were committed over at least two months, involved 26 businesses and the sentences do not exceed the statutory limits.  The sentencing court noted, without contradiction, that Fergason demonstrated a lack of remorse and stated his intention to continue burglaries upon his release from confinement. Although Fergason argues his prior felonies involved largely substance abuse, he also had a prior felony conviction for Attempted Burglary.  Although the sentencing court had discretion to impose a maximum sentence of Life without the possibility of parole given Fergason's prior felonies, the sentencing court did not impose the maximum sentence.  The sentencing court demonstrated it was mindful of the severity of the offenses compared to other offenses as indicated by its response to defense counsel's arguments for proportionality, and in its imposition of a significantly less severe sentence for Fergason than for Monroe (who had a substantially greater criminal history).  The severity of Fergason's sentence is lessened because Fergason is eligible for parole after serving twenty years for the offenses in this case. *See Rummel v. Estelle*, 445 U.S. 263 (1980) ("[B]ecause parole is 'an established variation on imprisonment of convicted criminals,' . . . a proper

assessment of [a state's] treatment of [a habeas petitioner] could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.") (internal citation omitted).  Under the circumstances, the Supreme Court of Nevada could reasonably reject the challenge to the sentence by concluding the severity of the sentence compared to the gravity of the offenses and criminal history does not rise to the level of a "rare" instance leading to an inference of gross disproportionality. *Graham*, 560 U.S. at 59–60.  Fergason is not entitled to federal habeas relief for Ground 3.

## V.   Certificate of Appealability

This is a final order adverse to Fergason. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002).  "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right," and for claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*  Applying these standards, a certificate of appealability is warranted for Ground 2(C) of the petition as reasonable jurists could debate whether the Court is correct in its procedural ruling that Fergason must first meet the requirements of § 2254(e)(2) before this Court may consider Fergason's expert declaration regarding property valuation submitted for the first time in these federal habeas proceedings, when considering whether, under *Martinez*, Fergason has overcome the procedural default of his claim in Ground 2(C) of the petition.

## V.   Motion to Seal Documents

The Respondents filed a Motion For Leave To File Documents Under Seal ("Motion") (ECF No. 97).  The Respondents seek to seal Petitioner's Presentence Investigation Report ("PSI")

(ECF No. 98-1), dated March 24, 2008, and Petitioner's Supplemental PSI (ECF No. 98-2), dated September 18, 2008.  Under Nevada law, the PSI is "confidential and must not be made a part of any public record." Nev. Rev. Stat. § 176.156(5).  Having reviewed and considered the matter in accordance with *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a compelling need to protect Petitioner's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records.  The Motion (ECF No. 97) is granted.  Exhibits 227 and 228 (ECF Nos. 98-1 and 98-2) are filed under seal.

## VI.  Conclusion

**IT IS THEREFORE ORDERED:**

1. Petitioner Bryan Michael Fergason's Third Amended petition for Writ of Habeas corpus under 28 U.S.C. § 2254 (ECF No. 70) is **DENIED**.

2. A Certificate of Appealability is **GRANTED for Ground 2(C)** of the Petition.  A Certificate of Appealability is **DENIED for all other grounds**.

3. The Respondents' Motion For Leave To File Documents Under Seal (ECF No. 97) is **GRANTED**.

4. Exhibits 227 and 228 (ECF Nos. 98-1 and 98-2) are considered properly filed under seal.

5. The Clerk of Court is directed to enter Judgment accordingly and close this case.

DATED:   March 14, 2024

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE